UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

Edward T. Kelly
Terri L. Kelly,                           Case No. 12-61616-MBM
                                                 Chapter 13
                     Debtors.     /             Hon. Marci B. McIvor

## **OPINION SUSTAINING BANK OF AMERICA'S OBJECTION TO CONFIRMATION**

The issue before this Court is whether the anti-modification provision of 11 U.S.C. § 1322(b)(2) applies to Debtor's residence at 2047 Ferdinand Street, Detroit, Michigan. Debtors' Plan contains language which attempts to cram down the amount owed on the mortgage on the property located at 2047 Ferdinand to the actual value of the property. Creditor Bank of America objects to the confirmation of Debtors' Plan claiming that the amounts owed on that property cannot be crammed down pursuant to 11 U.S.C. § 1322(b)(2). For the reasons set forth below, this Court SUSTAINS Creditor's Objection to Confirmation.

I.

FACTUAL BACKGROUND

Debtors filed this Chapter 13 Bankruptcy Case on September 26, 2012. On October 5, 2012, Debtors filed their Schedules and their Chapter 13 Plan. Debtors' Schedule A discloses their ownership interest in a residence located at 2063 Ferdinand St, Detroit, MI and a rental property located at 2047 Ferdinand St, Detroit, Michigan.

At the time this case was filed, Debtors were residing at 2063 Ferdinand.

Debtors purchased the 2063 Ferdinand property on August 10, 1993 and that property had been their residence for nearly twenty years. The Property at 2063 Ferdinand is valued on Debtors' Schedule A at $12,500 with three mortgages encumbering the Property totaling $107,500. The monthly payment on 2063 Ferdinand is $920.85 per month.

Debtors also purchased the property located at 2047 Ferdinand on August 10, 1993. Debtors refinanced their mortgage on the property located at 2047 Ferdinand on May 9, 2001 with Countrywide Home Loans, Inc. Countrywide was later purchased by Creditor Bank of America Home Loans. Countrywide was aware that the property located at 2047 Ferdinand was a rental property. On Schedule A, the Property at 2047 Ferdinand is valued at $10,000 with a mortgage held by Creditor Bank of America in the amount of $38,000.

The Debtors' Plan proposes that Debtors surrender their residence located at 2063 Ferdinand and move into their rental property located at 2047 Ferdinand. The Plan classified the property located at 2047 Ferdinand as a rental property. Debtors propose to pay the mortgage on the 2047 Ferdinand property as a secured claim in the amount of $10,000, which Debtors allege is the actual value of the property. Debtors propose to pay nothing on the balance owed on the note and mortgage on the Ferdinand property.

Approximately two months after Debtors filed for bankruptcy, Debtors moved from 2063 Ferdinand into their former rental property located at 2047 Ferdinand.

On November 26, 2013, Creditor Bank of America filed an objection to the confirmation of Debtor's Plan based on the cram down treatment of the property located

at 2047 Ferdinand. Creditor argues that, because Debtors intend to use 2047 Ferdinand as their principal residence, the loan on that property cannot be modified under 11 U.S.C. § 1322(b)(2).

II.

ANALYSIS

11 U.S.C. 1322(b)(2) states,

(b) Subject to subsections (a) and (c) of this section, the plan may–

\* \* \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

In other words, security interests in a debtor's primary residence cannot be modified.

The specific issue before the Court is whether 11 U.S.C. § 1322(b)(2) precludes Debtors from modifying the right of Bank of America to collect the full amount owed on real property that is now Debtors' residence, but was rental property on the date Debtors filed bankruptcy. Before the Court can address the specific issue, the Court must address the broader issue of what facts and dates determine whether a property is debtor's principal residence.

There are three lines of cases addressing how to determine which property is a debtor's principal residence. The first line of cases holds that the property in which the debtor resides on the date of filing bankruptcy is debtor's principal residence for purposes of 11 U.S.C. § 1322(b)(2). *See, e.g., In re Howard*, 220 B.R. 716, 718 (Bankr.

3

S.D. Ga. 1998); *In re Lebrun*, 185 B.R. 665, 666 (Bankr. D. Mass. 1995); *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D. N.H. 1994); *In re Churchill*, 150 B.R. 288, 289 (Bankr. D. Me. 1993). *See also* 2 K. Lundin, Chapter 13 Bankruptcy § 121.2 at 121-3-121-9 (3d Ed. 2000). The logic of this line of cases is that, because 11 U.S.C. §1322(b)(2) addresses modifications of a secured creditor's claim, and claims arise on the date of the filing of the bankruptcy, the filing date is the relevant date for determining whether a property is a debtor's principal residence.

The second line of cases holds that the date on which a debtor obtains financing for a property a debtor identifies as his/her principal residence dictates which property is a debtor's principal residence. *See, In re Williamson,* 387 B.R. 914, 920 (Bankr. M.D. Ga. 2008); *In re Smart*, 214 B.R. 63, 67 (Bankr. D. Conn. 1997). The reasoning behind this position is based largely on the concern that a contrary reading could lead to debtor manipulation; if a date other than the transaction date is utilized, debtors could seek to nullify the application of the anti-modification clause by modifying the use of their property immediately prior to filing.

As the court stated in *In re Baker,* 398 B.R. 198 (Bankr. N.D. Ohio 2008):

> "A debtor could easily sidestep the ... home mortgage exception by adding a second living unit to the property on the eve of the commencement of his Chapter 13 proceeding." *In re Bulson,* 327 B.R. 830, 846 (Bankr. W.D. Mich. 2005). Or, as also observed, a homeowner poised to file for protection under Chapter 13 could seek temporary tenants prior to their filing to negate the application of § 1322(b)(2)'s antimodification clause. *In re Gilbert,* 176 B.R. 302, 305 (D. R.I. 1995).

The third line of cases uses what might be called a "hybrid" approach to determining whether a property is a debtor's principal residence for purposes of 11 U.S.C. § 1322(b)(2). These cases acknowledge that both the filing date and the date

4

the debtor obtained financing on a property that the debtor claims as his/her principal residence have some relevance in determining the debtor's principal residence for purposes of 11 U.S.C. § 1322(b)(2). However, these cases also look to other facts to determine whether a property is a debtor's principal residence. For example, in *In re Baker*, the court allowed the debtor to modify a secured claim which the court determined had not been intended by the parties to relate to debtor's principal residence. *See also*, *In re Salmeron*, 2010 WL 1780119 (Bankr. D. Md. 2010) (court looked to state law for definition of domicile to determine whether residence vacated immediately prior to filing for bankruptcy was debtor's principal residence), *see also, In re Hickey,* Case No. 08-23159 (Bankr. E.D. Mich. February 19, 2009)(although debtor was not residing in property at the time of filing because of alleged dioxin contamination, the property was debtor's principal residence since he admitted that he intended to return to the property).

This Court agrees with the line of cases that take a more nuanced view of what facts and dates control the determination of whether a property is a debtor's principal residence. While this Court agrees that a secured creditor's claim arises on the date of filing of the petition (*see*, *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D. N.H. 1994) and *In re Baker,* 398 B.R. 198 (Bankr. N.D. Ohio 2008)), this Court finds nothing in either the statute or the legislative history that requires the determination of what property is a debtor's principal residence to be linked solely to the date on which a secured creditor's claim in bankruptcy arises. In applying a statute, courts are directed to examine the legislative intent if there is ambiguity as to how the statute should be interpreted. *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*,

5

203 F.3d 986, 988–89 (6th Cir.2000)(When a statute is ambiguous, we look to its purpose and may consider the statute's policy implications in determining what Congress intended). In his concurrence in *Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S. 324, 113 S.Ct. 2106, (1993) Justice Stevens observed that:

> "The legislative history of Section 1322(b)(2) indicates that favorable statutory treatment of homestead mortgagees was intended to encourage and sustain a flow of affordable capital into the home lending market."

*Nobelman,* 508 U.S. at 332.

Implicit in 11 U.S.C. § 1322(b)(2) is Congress' concern that if debtors are allowed to reduce their mortgage payments on their principal residence *over the life of their Chapter 13 plan of reorganization*, the ability of mortgagees to extend affordable credit would be impacted. Based on the Congressional intent in enacting 11 U.S.C. §1322(b)(2), this Court believes that the more important temporal consideration is not where debtors reside on the one day they file their petition (a date which may be subject to manipulation) but rather where debtors intend to reside during and after their bankruptcy. This Court concedes that it is a more fact intensive process to analyze what property debtors intend to use as a principal residence during and after their bankruptcy, but it does a disservice to 11 U.S.C. § 1322(b)(2) to allow a single date to determine which property is debtor's principal residence. The facts which should be considered in determining whether a property is a debtor's principal residence during and after the bankruptcy are similar to the facts to be considered in analyzing, under state law, whether a property is debtor's domicile.[1]

---

[1] Federal courts look to state law to determine parties' rights in property. *Butner v. U.S.*, 440 U.S. 48 (1979); *In re Salmeron*, 2010 WL 1780119 (Bankr. D. Md. 2010).

6

The facts that should be considered by the Court in determining principal residence are as follows: (1) where did the debtor reside on the date of filing of bankruptcy? (2) did the debtor move out of their principal residence either shortly before or after the filing of the bankruptcy? (3) did the debtor move into a property debtor had previously used as a rental property? (4) where does the debtor intend to reside for the duration of the bankruptcy? and (5) does the debtor retain title to the property even though debtor is not residing in the property at the time of filing for bankruptcy? (6) did the debtor start renting his/her principle residence to tenants around the time debtor filed for bankruptcy?

Applying this hybrid approach to the facts of the instant case, this Court finds that Debtors' principal residence is the property located at 2047 Ferdinand. On the date of filing, Debtors resided at 2063 Ferdinand and that property had been their principal residence. However, Debtors' Plan of Reorganization stated that Debtors intended to surrender that residence and move into a property Debtors owned as a rental property at 2047 Ferdinand. Debtors stated in their brief that they moved from 2063 Ferdinand to 2047 Ferdinand because 2047 Ferdinand has a lower monthly payment and is in better condition. It is clear from Debtors own statements that 2047 Ferdinand is now their principal residence. Simply stated, the residence located at 2047 Ferdinand is now Debtors' home.

Debtors' plan to modify Bank of America's claim by asserting that the property at 2047 Ferdinand is not their principal residence runs counter to the legislative intent behind 11 U.S.C. § 1322(b)(2). On the date of filing, Debtors owned two pieces of real property, a principal residence and a rental property. Because Debtors are now

7

surrendering the property that had been their principal residence, if they are allowed to treat the property in which they now reside as a rental property, they will circumvent their obligation to pay in full the claim against the house Debtors now call home. While in this case, Debtors had a logical reason for moving from the 2063 Ferdinand property to the 2047 Ferdinand property, this Court finds that Debtors' principal residence for purposes of 11 U.S.C. §1322(b)(2) is 2047 Ferdinand.

III.

CONCLUSION

For the reasons set forth above, Bank of America's Objection to Confirmation of Debtors' Chapter 13 Plan is SUSTAINED. In order to comply with 11 U.S.C. §1322(b)(2), Debtors must provide for full payment of Bank of America's claim against the property located at 2047 Ferdinand.

Signed on February 19, 2013

/s/ Marci B. McIvor
Marci B. McIvor
United States Bankruptcy Judge